IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATRINA O'CONNOR, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> REALPAGE INC., ) <br> ) <br> Defendant. ) | Case No. 21 C 6846 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Katrina O'Connor filed a lawsuit in the Circuit Court of Cook County against RealPage Inc. on behalf of herself and a putative class, alleging that RealPage violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681e(b). In December 2021, RealPage removed the case to federal court based on diversity of citizenship. RealPage answered O'Connor's complaint in January 2022, and in February 2022 the parties filed a proposed discovery plan. The Court entered a discovery and pretrial schedule on February 22, 2022. The next day, RealPage moved to transfer the case to the Northern District of Texas under 28 U.S.C. § 1404(a). The Court denies RealPage's motion for the reasons stated below.

### Background

In 2018, O'Connor, who resides in Chicago, was the subject of what she contends was an unlawful retaliatory eviction action filed in the Circuit Court of Cook County. In March 2018, the eviction case was settled, dismissed with prejudice, and

placed under seal. As a result, she alleges, publicly available court records would not have contained any information about the case.

In November 2019, O'Connor applied to rent an apartment in the SKY55 complex on South Michigan Avenue in Chicago. Later that month, RealPage prepared a tenant screening report about O'Connor, sold it to SKY55, and electronically delivered the report. Brookfield Properties Multifamily LLLC, a Delaware entity with its principal place of business in New York, manages SKY55. The report that RealPage provided to Brookfield Properties included information about O'Connor's dismissed and sealed Cook County eviction case. In December 2019, SKY55 notified O'Connor that it had denied her application because of unsatisfactory rental history information. O'Connor e-mailed RealPage, disputing the information on her report as inaccurate. In March 2020, RealPage responded that it had removed the disputed information from her report. In this lawsuit, O'Connor alleges that RealPage violated FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of sealed or expunged eviction information it provides in tenant screening reports.

RealPage is a Delaware corporation with its principal place of business in Texas. It regularly conducts business in Illinois and has a registered agent in Chicago. RealPage prepares screening reports for a fee. It says that it purchases most eviction information from LexisNexis Risk Data Retrieval Services, which is incorporated in Georgia and also has its principal place of business in that state.

RealPage's screening division is responsible for the delivery of reports to its customers and is overseen by the RealPage's Product Management and Operations Team. The Operations Team handles any questions regarding the accuracy of the

tenant screening reports and can access RealPage's Servers. RealPage says that the servers and the Operations Team are all located in Richardson, Texas, except for two employees who work remotely from Colorado and Massachusetts.

RealPage has an office in Lombard, Illinois, and approximately 133 RealTime employees reside in Illinois. RealTime contends, however, that none of those employees are a part of the Operations Team. RealPage also says that only 1.6% of the reports it generates concern tenants in Illinois and that only 2.6% of its customer base is located in Illinois. RealPage has not provided the corresponding figures relating to Texas.

## Discussion

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The party seeking transfer—RealPage—bears the burden of establishing that the proposed transferee district is "clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). If the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for the transfer. *See, e.g., Gueorguiev v. Max Rave, LLC,* 526 F. Supp. 2d 853, 857 (N.D. Ill. 2007). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).

In considering a motion to transfer, a court considers private-interest factors, including the plaintiff's choice of forum, the situs of material events, relative ease and

3

access to the source of proof, the convenience of the parties, and the convenience of the witnesses. *See, e.g., A.M. Castle & Co. v. Byrne,* No. 13 C 4835, 2013 WL 5511673, at *2 (N.D. Ill. Oct. 3, 2013). A court also considers public-interest factors, including the respective courts' familiarity with the applicable law, the likely pace at which the case will proceed to trial, the relationship between the respective districts and the occurrence at issue, and the desirability of resolving controversies in their locale. *See, e.g., Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000). It is undisputed that venue is proper in both this district and the Northern District of Texas. The Court therefore addresses the factors just listed.

**1.      Private-interest factors**

*Plaintiff's choice of forum.*  Generally, significant deference is given to a plaintiff's choice of forum, especially if it is—as in this case—the plaintiff's home forum. *See, e.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). This is not always a determinative factor, however; its significance may be diminished if the material events occurred elsewhere. *See, e.g., Sassy, Inc. v. Berry*, 406 F. Supp. 2d 874 (N.D. Ill. 2005).

In this case, O'Connor chose to file the case in Illinois. She contends that the Court should defer to that choice because she lives in Chicago; the tenant report that RealPage provided about her contained information about an eviction proceeding in the Circuit Court of Cook County; RealPage sold that report to a customer in Chicago in connection with the proposed rental of an apartment in this city; and she suffered the alleged harm in Chicago when she was declined an apartment rental here.

RealPage argues that as a proposed representative of a nationwide class of

plaintiffs, O'Connor's choice of forum should be given no weight, as most of the unnamed class members are likely to be from states other than Illinois and will be inconvenienced.  The same claimed inconvenience would exist, however, if the case were transferred to Texas.  More importantly, it is extraordinarily unlikely that unnamed class members will actually be called upon to participate in the litigation, except by responding by mail or e-mail to notice if a class is certified and considering—again, remotely—a proposed class settlement if one is ultimately reached.  For these reasons, the convenience of the members of a possible nationwide class does not, in the Court's view, diminish the deference to be given to O'Connor's choice of her home forum.

That aside, O'Connor also proposes—at least potentially as a fallback position—subclasses consisting of persons whose reports contained information about Illinois eviction cases and Cook County eviction cases, categories of individuals likely to consist overwhelmingly of Illinois residents.  Thus even if O'Connor's potential status as a representative of a nationwide class is appropriately considered as RealPage argues, then her potential representation of two largely Illinois-based subclasses should be considered as well and weighs against transfer.  Finally, even if a nationwide class were certified with O'Connor as its representative, "unnamed class members benefit from the class representative being able to aggressively litigate without significant inconvenience due to travel." *A.L. & P.O. Corp. v. Am. Healthcare Cap., Inc.*, No. 14 C 1905, 2015 WL 738694, at *1 (N.D. Ill. Feb. 9, 2015).  This is particularly so when, as in this case, the class representative is a person of limited means (O'Connor was represented by a legal aid organization during her eviction case).

The Court concludes that O'Connor's choice of her home forum is entitled to

significant deference.

*Situs of material events.* This factor is neutral with respect to transfer, or at most tilts only slightly in favor of transfer. RealPage argues that O'Connor's complaint targets the procedures it takes when creating, generating, and maintaining tenant reports, activities that it contends take place in Richardson, Texas. RealPage also cites data indicating that only a small percentage of its reports concern Illinois tenants and that less than three percent of its customer base is in this state (again, it has not provided corresponding information relating to Texas). But the material events also include the injury that O'Connor suffered, which occurred in Illinois. *See, e.g., A.L. & P.O. Corp.*, No. 14 C 1905, 2015 WL 738694, at *1. The injury to O'Connor, as the proposed class representative, is likely to be a significant issue in the litigation even if it is ultimately certified as a nationwide class—which is a speculative proposition at this point. In addition, there is likely to be an issue—at least with respect to O'Connor's own claim—regarding how RealPage or its data source obtained information about her Cook County eviction case, which she contends was sealed and would not have shown up on publicly available records concerning the case. There is a good chance that the events relating to this point occurred in Illinois.

*Ease of access to sources of proof.* This factor is neutral, as the relevant evidence is easily transferable. When (as in this case) relevant documents are likely available electronically and can be transferred easily, this factor does not have a significant impact. *See, e.g., Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 932 (N.D. Ill. 2017).

RealPage contends that accessing at least some of its information is a

6

complicated matter favoring transfer to Texas, given the logistics and risks involved in producing sensitive FCRA-regulated material that contains personally identifiable information. RealPage offers no basis to believe, however, that whatever protocol ends up being negotiated is likely to require physical travel to Texas. Indeed, in the parties' proposed discovery plan, RealPage agreed to produce electronically-stored information in Bates-labeled PDF format, which would make it available anywhere.

In short, RealPage has not shown that the "access to sources of proof" factor is significant in this case or that it materially tilts in favor of transfer of the lawsuit.

*Convenience of the parties and witnesses.* To bring this factor into play, the party seeking transfer must specify the key witnesses to be called and provide a general statement of their anticipated testimony. *See, e.g., Vandeveld v. Christoph*, 877 F. Supp. 1160, 1168 (N.D. Ill. 1995). The convenience of non-party witnesses is weighed more heavily than that of party witnesses, because the attendance of party-related witnesses is likely to be ensured by their employer—in this case RealPage. *See, e.g., Qurio Holdings, Inc. v. Comcast Cable Commc'ns, LLC*, No. 14 C 7488, 2015 WL 535981, at *3 (N.D. Ill. Feb. 9, 2015) (Kennelly, J.); *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1008 (N.D. Ill. 2007).

Real Page says that its key witnesses are all located in Texas and that none are in Illinois. It contends that a transfer to the Northern District of Texas is likely to reduce the time these employees are away from their regular employment. O'Connor responds, however, and the Court agrees, that in this day and age the depositions of these persons can, and likely will, be taken by video conference, thereby avoiding any travel-related inconvenience. RealPage also argues that if any of its relevant

7

employees separate from the company, they will be outside the subpoena power of a court in Illinois. But that is a speculative proposition that has no support in the record before the Court. More generally, the Seventh Circuit has indicated that a court typically should not give significant weight to concerns based on discovery-related travel difficulties, stating that "in our age of advanced electronic communication, including high-quality videoconferencing, changes of venue motivated by concerns with travel inconvenience should be fewer than in the past." *In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013).

The convenience of third-party witnesses tends to be given greater weight in the analysis. *See, e.g., Qurio Holdings, Inc.*, 2015 WL 535981, at *3. Some of those witnesses—those from LexisNexis and from the management company for Sky55—are in neither Illinois nor Texas, so the situs of the lawsuit will not materially affect their convenience. But some potential witnesses with respect to O'Connor's claim, specifically persons with knowledge of the recordkeeping systems of the Circuit Court of Cook County who could shed light on what was publicly available regarding O'Connor's sealed eviction case, are located in Illinois and are outside the subpoena power of a court in Texas.

**2.      Public-interest factors**

"The interest of justice is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d at 973, 978 (7th Cir. 2010). A court compares the transferor and transferee districts' "docket congestion and likely speed to trial," "each court's relative familiarity with the relevant law," "the respective desirability of

resolving controversies in each locale," and "the relationship of each community to the controversy." *Id*.

The Court finds that these factors do not tilt significantly one way or the other. The legal familiarity factor is neutral, as O'Connor asserts her claim under the FCRA, a federal statute with which both courts are familiar. There is only a one-month difference between the median time from filing to disposition, 14.2 months here versus 13.2 in the Northern District of Texas. RealPage suggests significant weight should be placed on the median time to trial (48 months here versus 28 months in the proposed transferee district). But this is an average for all case types that says nothing about this particular case. *See Qurio Holdings, Inc.*, 2015 WL 535981, at *4. And in this case RealPage proposed and agreed to a schedule, later entered by the Court, that will have this case trial-ready by the fall of 2023, only about 21 months after its removal to federal court— which makes the 48-month figure essentially irrelevant. RealPage offers no basis to believe that this particular case would move any faster than the agreed-upon schedule if it were transferred to Texas.

In this case, the factor involving the respective desirability of resolving controversies in each locale is neutral, as relevant events appear to have taken place both in Illinois and in Texas. As discussed earlier, Illinois has a "discernable" relationship with the dispute case, and as a result this factor is neutral. *See, e.g., Sunrise Bidders, Inc. v. GoDaddy Grp., Inc.*, No. 09 C 2123, 2011 WL 1357516, at *4 (N.D. Ill. Apr. 11, 2011).

## Conclusion

The case does have a connection to Texas, but it also has a connection to

9

Illinois, the forum that O'Connor, an Illinois resident, chose when she filed suit in her home state, where she suffered her claimed injury. Transferring the case to the Northern District of Texas would do little more than shift the burden of any inconvenience from RealPage to O'Connor. The Court concludes that RealPage has failed to establish that the proposed transferee forum would be "clearly more convenient" and therefore denies its motion to transfer [dkt. no. 17].

Date: May 11, 2022

```
                                    _____
                                            MATTHEW F. KENNELLY
                                            United States District Judge
```